## John A. Haven *versus* Prince Snow.

Where an officer, immediately upon receiving a writ with directions to attach certain real estate of the debtor, made a memorandum upon the writ that he attached accordingly, stating the day and month, but afterwards by mistake returned that he attached on the same day of the succeeding month, and in the Court of Common Pleas, at the return term, upon leave to amend he corrected the error, it was *held* that the amendment was properly allowed, the memorandum being something to amend by.

It was also *held,* that the amendment was effective as against another creditor who attached the same real estate between the days mentioned in the memorandum and in the return, such creditor having constructive notice of the first attachment.

The same attorney having commenced both actions and directed the order of the attachments, notice to him of the first attachment was *held* to be notice to the subsequently attaching creditor.

THIS was an action on the case against a deputy sheriff for neglecting to serve a writ in favor of the plaintiff against George Baxter by the attachment of his real estate, pursuant to the plaintiff's directions, by which neglect the plaintiff alleged he had lost the debt due to him from Baxter.

At the trial, before *Morton* J., the plaintiff proved, that on the 19th of November, 1830, he caused a writ in his favor against Baxter, founded on a promissory note for 639 dollars, to be delivered to the defendant, with directions to attach certain real estate of Baxter, in Boston, and made a memorandum to that effect on the writ, and furnished the defendant with a memorandum of the lands, which are the same described in the defendant's return on the writ. The defendant received the writ and undertook to serve it according to the directions. But the next day, November 20th, the defendant attached the same lands on a writ in favor of one Austin. They had been previously attached by another deputy sheriff, on the 18th of November, on a suit in favor of one Strong against Baxter. They were again attached by another deputy sheriff on the 22d of November, on a writ in favor of Messrs. Carnes against Baxter. On the 24th of November they were mortgaged by Baxter to one Cooke.

The plaintiff then put into the case the original writ in his favor against Baxter, and the defendant's return thereon

made to the January term of the Common Pleas, by which
it appeared that the defendant, on the 19th of December,
1830, at twenty minutes past 12 o'clock P. M., had attached
the lands before mentioned.

The plaintiff further proved, that at the January term of
the Common Pleas, 1832, judgments were recovered in the
suits of Strong, Austin and Messrs. Carnes for the amount
of the debts, and also in the suit of the plaintiff for $777·30,
and that executions on these judgments were levied in due
time in the following order, viz. Strong's, the plaintiff's,
Austin's and Messrs. Carnes's.    The plaintiff's execution
was levied on land in Belknap street and returned satisfied.
The same land was afterwards levied on by virtue of Messrs.
Carnes's execution, and seisin thereof delivered to them by
another deputy sheriff.    Baxter's lands were not sufficient
to satisfy all the executions, that of Messrs. Carnes being
returned satisfied in part only.

By the return on the plaintiff's execution the defendant
delivered seisin of the land levied on " subject to any prior
attachment if any there be thereon "

It further appeared that the plaintiff's attorney, when he
handed the writ to the defendant, saw him make a memo-
randum, but what the memorandum was he did not know.
The plaintiff's attorney was also the attorney of Strong, Aus-
tin and Messrs. Carnes, and he delivered their writs to the
several deputy sheriffs with directions as to the attachments,
and he directed the levies of their executions as he thought
most beneficial to them, having regard to the priority of at-
tachments.

At the January term of the Common Pleas, 1830, the
plaintiff's attorney filed for the defendant a petition for leave
to amend his return on the plaintiff's writ by inserting the
19th of November instead of the 19th of December ; which
was granted and the amendment made accordingly.

The 19th of December was Sunday.    The return on the
plaintiff's writ states that the defendant gave a summons to
Baxter on the 8th of December.

On the original writ, which was produced by the plaintiff,
appeared the following memorandum in the handwriting of

3 *

*Haven v. Snow*

the defendant : — " Attached as above directed 20 minutes past 12 P. M. Nov. 19th. — Attachment No. 1, by P. S. Dep. Shff."

The defendant's return on the writ of Austin set forth, that the attachment by virtue thereof was the second one made by the defendant on the lands above mentioned, and that the prior attachment was in favor of the plaintiff.

The levy of the plaintiff's execution has been no otherwise disturbed than by the subsequent levy of Messrs. Carnes's execution ; since which the plaintiff has not entered or been in possession, nor in any way intermeddled with the rents and profits.

The defendant offered his private book or record of his doings in relation to writs and processes, as evidence of his doings in relation to the plaintiff's writ and the time of the attachment, but the same was rejected by the said judge

The Court were to render such judgment for the plaintiff or defendant as the rules of law should require.

*March 25th.*    *Bartlett* for the plaintiff. If there were no amendment, the defendant could not aver or prove, against his return, that he made the attachment on the 19th of November. *Gardner* v. *Hosmer*, 6 Mass. R. 325 ; *Weld* v. *Bartlett*, 10 Mass. R. 475. Nor in an action against him for a fault in his return, whereby the plaintiff has lost his property, can he be allowed to amend. *Emerson* v. *Upton*, 9 Pick. 167 ; *Williams* v. *Brackett*, 8 Mass. R. 240 ; *Means* v. *Osgood*, 7 Greenl. 147. The plaintiff contends that he has lost his property in consequence of the levy of the execution of Messrs. Carnes ; who are a third party and cannot be affected by an amendment. But if their title is questioned, on the ground that the case of *Emerson* v. *Upton* is applicable only to innocent purchasers, and that Messrs. Carnes had notice, the plaintiff's attorney being likewise their attorney, still we say that Cooke had no notice and the mortgage to him equally deprives the plaintiff of the land.

*Fletcher*, for the defendant, cited as to amendments, *Emerson* v. *Upton*, 9 Pick. 170 ; *Mestaer* v. *Hertz*, 3 Maule & Selw. 450 ; *Hunt* v. *Pasman*, 4 Maule & Selw. 329 ; *Thatcher* v. *Miller*, 11 Mass. R. 413, and 13 Mass. R. 270 ; *Pres*

*cott* v. *Tufts*, 4 Mass. R. 146 ; *Freeman* v. *Paul*, 3 Greenl. 260 ; *Means* v. *Osgood*, 7 Greenl. 148 ; *Adams* v. *Robinson*, 1 Pick 462.

WILDE J. delivered the opinion of the Court. The defendant is charged with the neglect or breach of his official duty, he being a deputy sheriff, in not duly serving a certain writ in favor of the plaintiff, by the means of which he has lost his debt. The writ was handed to the defendant by the plaintiff's attorney on the 19th day of November, 1830, with directions to serve it by laying an attachment on the debtor's real estate. But it appears by the defendant's return, that the attachment was not made until the 19th day of December following, and that in the mean time, viz. on the 22d day of November, the same estate attached on the plaintiff's writ was attached on a writ in favor of Messrs. Carnes against the same debtor, and that they afterwards levied their execution on the whole of the lands levied on by the plaintiff. It appears, however, if it is competent for the defendant to show the fact, that the attachment on the plaintiff's writ was in truth made on the 19th of November, instead of the 19th of December, and that the return was amended accordingly.

The question is, whether the defendant is liable for the mistake made in his return, or in other words, whether the Messrs. Carnes had a right to hold the lands attached and levied on against the plaintiff.

The plaintiff's counsel rely on the case of *Emerson* v. *Upton*, 9 Pick. 167, which in many respects bears a close resemblance to the case at bar. But these cases differ in two important particulars.

In the first place, in the case of *Emerson* v. *Upton* there was no written minute, or any other document, to amend by, and this is noticed by the late chief justice as a material circumstance to show the danger of allowing an amendment to operate in that case. He observes "that the officer should at least make a minute of his doings at the very moment when the act is to have its legal operation, and not, after months have elapsed, be permitted to retrace his steps, and change the whole effect of his proceedings, as apparent by his official

return." The same difficulty prevented the allowance of an amendment of the officer's return in *Thatcher et al.* v. *Miller*, 13 Mass. R. 270. " In the cases cited," it is said, " where amendments have been permitted, there was something on the record, by which the correction could be made ; and in such cases there can be no difficulty." The same point is noticed in *Means* v. *Osgood*, 7 Greenl. 146.

In the present case there is a memorandum of the time of the attachment, in the handwriting of the defendant, and signed with the initials of his name, made at the very moment of the attachment, and in presence, undoubtedly, of the plaintiff's attorney, so that there can be no possible doubt of the verity of the amended return.

It has been argued that the amendment makes no substantial difference ; that the memorandum of the attachment, appearing on the writ, may be considered as a part of the return ; and that it sufficiently appeared before the amendment, at what time the attachment was made. Without deciding this point, it is sufficient to say that the memorandum fully justifies the amendment, and that this case is to be decided by the facts appearing by the amended return.

2. The other circumstance by which this case is distinguished from that of *Emerson* v. *Upton* is perhaps not less important. The demandant in that case had no notice of the attachment set up against him before he recorded his mortgage deed. In the present case the Messrs. Carnes had constructive notice of the plaintiff's attachment before suing out their writ. The plaintiff's attorney was also employed by them, and he had sufficient notice of the plaintiff's attachment. He directed the order of the attachments, and he could have no reason to doubt that the plaintiff's attachment had been made as directed. Now it is a well established principle, that *notice to an agent or attorney is presumptive notice to the party himself.* 2 Fonbl. 153. As where all the securities were transmitted by the same scrivener, notice to him is notice to all the parties. *Brotherton* v. *Hatt*, 2 Vern. 574. So if A purchases in the name of B, with knowledge of a prior incumbrance, and B pays the purchase money, without notice of the incumbrance, yet he shall

be affected with the notice to A, because B, by approving of A's conduct, made him his agent *ab initio. Jennings* v. *Moore et al.*, 2 Vern. 609. This case is doubted by Lord *Hardwicke* in the case of *Le Neve* v. *Le Neve*, 3 Atk. 649, but he fully admits the general principle. There may be cases where a party would not be bound by the knowledge of facts possessed by an agent or attorney, as where such facts had come to his knowledge a long time before he was engaged to act as agent or attorney, or under circumstances which would warrant a presumption that he had forgot the facts. But in the present case the attorney of Messrs. Carnes was the attorney of all the attaching creditors ; he acted with full knowledge of all the facts ; and directed the order of the attachments. If he had attempted to give an undue preference to one of the creditors, or to take advantage of a slip by the officer, it would have been a fraudulent attempt, of which the party would not be permitted to avail himself. Under these circumstances notice to the attorney is sufficient, and equivalent to notice to the party himself. It is true there was in fact in this case no intention on the part of the attorney, at the time of ordering the attachment in favor of Messrs. Carnes, to take any undue advantage of the officer's mistake, for it had not then happened ; but it is equally against good faith for the party to take any such advantage now. We think therefore the Messrs. Carnes have no right to object to the amendment of the officer's return, as they will not thereby be deprived of any benefit intended to be secured to them at the time of the attachment.

The cases cited as to amendments of writs have but a slight bearing ; but there is a remark made in *Emerson* v. *Upton* which may.require some explanation. It is there said, that " it will be found on examination of the cases in which amendments of writs have been granted, that the effect of them, when any change has been made, has been limited. to the parties to the suit in which the amendment is granted." It must not be inferred from this remark that all amendments are to be thus limited, for it is clear, we think, that amendments in form merely will not dissolve an attachment so as to let in subsequently attaching creditors, or discharge bail.

*Haven v. Snow.*

To have this effect the amendment must be such as ·may let in some new demand, or new cause of action.·

In respect to Cooke's mortgage it is clear that his claim cannot affect the present action, for he cannot hold against the attachment and levy of Messrs. Carnes, and it is to him immaterial whether their title or the plaintiff's eventually prevails.

*Plaintiff nonsuit.*